# Shoemaker *v.* Line Lexington Mutual Fire Insurance Company.

*Insurance—Mutual fire insurance—By-laws—Overinsurance—Power of general agent.*

A by-law of a mutual fire insurance company which provides that the company shall not be liable for a greater amount on any one building and the contents thereof beyond a sum mentioned, is intended to limit the power of the board of managers, and to govern them in taking insurance and issuing policies for a greater amount than therein stated. It was not intended that the company should use the by-laws as a defense where it had with full knowledge taken a risk for an amount in excess of the limit, and accepted the premiums on the larger sum for many years.

*Insurance—Mutual fire insurance companies—By-laws—Waiver.*

Where a by-law of a mutual fire insurance company provides that the managers may change any by-law so long as their action is not repugnant to the charter of the company, the managers may in a particular case waive the provision of another by-law which directs that the company shall not be liable for a greater amount on any one building and the contents thereof then a sum mentioned.

A by-law of a mutual fire insurance company provided that the company should not be liable for a greater amount on any one building and the contents thereof than $6,000. Another by-law gave the managers the power to change any by-law so long as their action was not repugnant to the charter. Plaintiff owned personal property which he had insured in the mutual company. He removed this property to another township and placed it in a mill which was insured by its owner. The insurance on the mill and its contents amounted in the aggregate to more than $6,000. When the goods were removed, plaintiff submitted his policy to one of the managers, who was also the general agent of the defendant company, who had knowledge of the facts, and returned the policy to him, with an indorsement, showing knowledge on the part of the company of the removal of the property attested by the secretary. The company thereafter accepted premiums for twelve years. *Held*, that the company could not defend as to any part of the claim on the ground that the insurance on the mill and its contents was in excess of $6,000.

Argued Dec. 8, 1900. Appeal, No. 200, Oct. T., 1900, by defendant, from judgment of C. P. Montgomery Co., Oct. T., 1899, No. 22, on verdict for plaintiff in case of George H. Shoemaker v. The Line Lexington Mutual Fire Insurance Company of Bucks and Montgomery Counties. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit on a policy of fire insurance.   Before Swartz, P. J.

At the trial a verdict of $295.05 was rendered in favor of plaintiff subject to the question of the law reserved, whether under all the evidence the plaintiff was entitled to recover.   On a motion for judgment for defendant non obstante veredicto, Swartz, P. J., filed the following opinion:

George Kremer had his mill buildings insured in the defendant company.   The mill was destroyed December 20, 1898. At the time of the fire Mr. Kremer's insurance was $4,000.

The plaintiff, George H. Shoemaker, was the owner of some personal goods and insured them in the defendant company. At the time his policy was issued, the property was located in Upper Salford township.   In 1887 the plaintiff became the tenant of the Kremer mill, which was located in Perkiomen township.   The plaintiff placed his personal property in the Kremer mill.   He handed the policy to Abraham G. Schwenk, a director or manager of the defendant company, for the purpose of having the removal approved.   Mr. Schwenk took the policy to the secretary of the company for its assent to the removal of the goods.   The secretary indorsed on the policy as follows: " Property removed to Perkiomen township, Montg. Co., Pa. Attest: William H. Price, Sec'y."   This approval was noted on the policy in 1887.   The plaintiff's insurance at the time of the fire in 1898 was $3,620.   Of this sum $3,000 apparently covered the plaintiff's contents of the mill, so that the mill building and the contents were insured in the defendant company for $7,000 at the time of the fire.

The plaintiff paid his assessments for fire losses from 1887, the time the property was placed in the mill, to 1899.   The assessments were computed on the full insurance of $3,620.

The fire loss on the mill building was appraised at $3,600, and the same committee appraised the plaintiff's loss on contents at $2,678.61.   When the report was brought " before the board it was passed;" but afterwards the company refused to pay the plaintiff more than $2,400, because it claimed that the liability for building and contents could not exceed $6,000. Mr. Kremer was paid his $3,600 in full; and this, with the $2,400 paid the plaintiff, aggregates $6,000.

The company relies on article 3 of the by-laws for refus-

ing to pay the plaintiff's claim—the full $2,678.61. This by-law reads as follows : " Buildings and other property located in Bucks and Montgomery counties, not excluded by the charter nor by this article of the by-laws, may be insured for their actual cash value. But this company shall not be liable for a greater amount on any one building and the contents thereof than $6,000, whether such contents were in such building at the time of the insurance or not."

We instructed the jury that if the defendant company had no knowledge, at the time the removal of the goods was approved, that the property was placed in the Kremer mill building, it was not liable beyond the $6,000 ; but if it had such notice, and accepted the plaintiff's assessment for twelve years on $3,620, the policy was valid for that sum.

Whether the company had such knowledge was the only question submitted to the jury. We so informed counsel before we began the charge, and he did not see fit to address the jury. In fact, there was no reason for any other action on his part. The evidence was explicit and uncontradicted that the company, through its authorized agent had such notice. It is true the notice was given to Mr. Schwenk, a manager, and ordinarily this would not be sufficient: Hook v. Mutual Insurance Co. of Berks County, 160 Pa. 229. Mr. Schwenk was more than a director—he was a general agent of the company. Mr. Price, the secretary, testified : " Mr. Schwenk was an officer of the company from November 2, 1881. He looked after insurance in the towns of Upper Salford, Lower Salford, Perkiomen, or anywhere else in the district." In this case the application for the original policy was in Mr. Schwenk's handwriting, and he was intrusted with the policy for the purpose of having the removal approved. As the representative of the company he undertook the work, with the full knowledge that the property was located in the Kremer mill. He obtained the approval, and handed it back to the plaintiff. There was nothing to indicate to the plaintiff that his insurance was not as good and valid as it had been when his property was located in Upper Salford.

Article 6 of the by-laws empowers the managers to take insurance. It provides as follows : " Any member of the board of managers of the Line Lexington Mutual Fire Insurance

Company of Bucks and Montgomery counties is authorized to effect insurance and give a receipt for the insurance fees.   And all insurance so made shall be effectual, and the manager or managers effecting such insurance shall be indemnified in accordance with article 7 of the by-laws."

Under the charter and by-laws the powers of an individual manager are very extensive, and apparently they are the only persons who can effect insurance.

Counsel for defendant contends that a contract to pay more than $6,000 is not binding, even if made by the full board of managers.

Article 3 of the by-laws is evidently intended to limit insurance to $6,000 for a building and contents.   True, it does not say that a policy shall not exceed $6,000; but it cannot mean that the company may insure for $10,000, collect the premium for years, and then upon a loss of $10,000 pay but $6,000. What is meant is that risks shall not exceed $6,000; and we were informed at the trial that this is the interpretation placed upon the by-law by the company. . Policies are not issued on a single risk for more than $6,000.

Shall the company with full knowledge take a risk for more than $6,000, accept the premiums on the larger sum for many years, and then when the day of reckoning comes be allowed to set up its own by-law to defeat the insured who paid his money in good faith?

The charter does not in any way limit the amount of a single risk.   By article 8 the managers may change any by-law so long as their action is not repugnant to the charter of the company.   If they can strike down a by-law altogether, why may they not waive its condition in a particular case if they see fit to do so, and deem it to the interest of the company?

The liability on the plaintiff's policy after the removal of the property was knowingly assumed by the defendant company; it received the benefit of the contract for twelve years.   The money so received was applied to the needs of the company. We must assume that the contract so made was deemed by the managers beneficial to the company, and it should not now be heard when it attempts to repudiate its undertaking; especially so when no individual policy holder appears to dispute the authority of the managers to make the agreement: Manhattan

Hardware Co. v. Phalen, 128 Pa. 110. We cannot distinguish this by-law from that considered in Cumberland Valley Mutual Protection Co. v. Schell, 29 Pa. 31, where a by-law prohibiting insurance in excess of two thirds of the estimated value was treated as a direction of the discretion of the company's officers in making a contract. It was not a condition of the contract, it was not of the substance, was not essential but merely directory. Moore v. Susquehanna Mutual Fire Insurance Co., 196 Pa. 30, is to the same effect. The company, through its duly authorized agents, having made the contract and reaped its benefits, should be bound by its conditions.

And now, September 3, 1900, the reasons for a new trial are dismissed, a new trial is refused, the motion for judgment non obstante veredicto is overruled, and judgment will now be entered on the verdict of the jury.

*Error assigned* was in entering judgment on verdict.

*J. P. Hale Jenkins*, for appellant.—It is submitted that neither Mr. Schwenk, the person who carried the policy to the secretary of the company, nor the secretary, was authorized to accept insurances and have removals of property noted on policies of insurances in force, in direct violation of the by-laws of the company: Hook v. Mutual Ins. Co. of Berks County, 160 Pa. 229; Mitchell v. Lycoming Mutual Ins. Co., 51 Pa. 402.

The act of Shoemaker in removing his goods into the mill property of Kremer, and having the fact of the removal noted upon his policy, not as being removed to the Kremer mill property but into " Perkiomen township," is an act of overinsurance, forbidden by the by-laws and not the subject of authorized waiver by any officer or agent of the company: Mitchell v. Lycoming Mutual Ins. Co., 51 Pa. 402 ; Simpson v. Penna. Fire Ins. Co., 38 Pa. 250; Lycoming Mutual Ins. Co. v. Slockbower, 26 Pa. 19; Bahner v. Stone Valley Mutual Fire Ins. Co., 127 Pa. 464.

Waiver is a matter of intention and cannot take place unless the insurer knows of a breach of the contract: Diehl v. Adams County Ins. Co., 58 Pa. 443 ; Waynesboro Mutual Fire Ins. Co. v. Conover, 98 Pa. 384; Flynn v. Peoples' Mutual Live Stock Ins. Co., 4 Pa. Superior Ct. 137 ; McSparran v. Southern Mut. Ins. Co., 193 Pa. 185.

*Henry M. Brownback,* for appellee.—Where the company has knowledge of the violation of a condition in the policy and yet continues to treat the policy as in force, it cannot be permitted to set up a breach to defeat the contract: Kalmutz v. The Northern Mut. Ins. Co., 186 Pa. 571; Elliott v. Lycoming County Mutual Ins. Co., 66 Pa. 22; Stauffer v. Penna. Mut. Fire Ins. Assn., 164 Pa. 199; Walker & Kavanaugh v. Lion Fire Ins. Co., 175 Pa. 345.

If the company was dissatisfied with the acts of its officers it was its duty to have declared the policy void immediately after notice, and not wait until it was called upon to fulfil its contract: Farmers' Mutual Ins. Co. v. Taylor, 73 Pa. 342; Light v. Countrymen's Mutual Fire Ins. Co., 169 Pa. 316; Bahner v. Stone Valley Mutual Fire Ins. Co., 127 Pa. 464.

OPINION BY BEAVER, J., January 22, 1901:

The only question in this case, raised by the assignments of error, is whether or not the court below erred in entering judgment for the plaintiff upon the reserved point, overruling the motion of the defendant company for judgment in favor of the defendant non obstante veredicto. The facts in the case are fully and fairly stated in the opinion accompanying the order for judgment and need not be here repeated. The jury found, as a matter of fact, that the defendant company had notice of the removal of the plaintiff's personal property from one locality to another.

Little can profitably be added to the discussion by the court below as to the proper construction of article 3 of the by-laws of the defendant company, which seems to have been the principal point of controversy. By the terms of this article of the by-laws, the company seeks to limit its liability upon "any one building and the contents thereof" to $6,000. The court below held that this was to be treated as a direction to the officers of the company in making insurance rather than as constituting a binding limitation upon parties insured. In Moore v. Susquehanna Mutual Fire Ins. Co., 196 Pa. 30, Mr. Justice FELL said: " The by-law in relation to excessive insurance was a regulation of the company for the management of its business, and the mere fact that property was insured for more than two thirds of its value did not affect the validity of the policy, unless the over-

insurance was procured by means of some wrongful act on the part of the plaintiff." Article 3 of the by-laws was undoubtedly intended to limit the power of the board of managers and to govern them in taking insurance and issuing policies for a greater amount than therein stated. Here was a case, however, not of original insurance but altogether exceptional. A building in one locality and the contents of one in another already insured were brought together, the aggregate of the insurance on both exceeding the maximum amount allowed under the limitation in this article.

The plaintiff, as a member of the company, was bound by its constitution, by-laws, rules and regulations, as he stipulated in his policy. The constitution and by-laws are not fully printed but, as appears by " article 8, the board of managers are hereby authorized and empowered to make and amend such by-laws, rules and regulations as may be necessary to carry out the objects of the company, if not repugnant to the charter of the company. " It does not appear affirmatively that the plaintiff had any notice of insurance upon the building, and the offer to show that he had no knowledge of the insurance of Kremer in the defendant's company was objected to and ruled out. Even if he had such knowledge, however, he would have been justified in concluding, when his policy was returned with the indorsement as to the removal of his personal property to Kremer's building, that the conditions of article 3 had been waived by the board of managers, for the power to make and amend the by-laws, as might be necessary to carry out the objects of the company, surely conferred the power to waive as to a particular case. It will not be denied that, under the general power contained in article 8, the board of managers could have changed the limit of insurance provided for in article 3. If they could do so generally, surely in this exceptional case the limitation could be waived. The indorsement upon the policy must be held to relate not only to the mere fact of removal but to every other purpose, including the amount of insurance allowed, for which it was necessary. It is argued, however, that the indorsement is the individual act of the secretary who had no authority to waive any of the provisions of the by-laws, but the character of the indorsement itself indicates otherwise. It is not signed by

the secretary as his act but attested by him, which indicates the act of the corporation acting in its corporate capacity.

It is contended by the appellant that it was the plaintiff's duty to inquire of the owner of the building as to the companies in which he was insured and the amount of the insurance. There was no such duty resting upon him. He submitted his policy to one of the managers, who was also the general agent of the defendant company, who had knowledge of the facts and returned the policy to him, with an indorsement, showing knowledge on the part of the company of the removal of the property, attested by the secretary. The company had the record of its policies in its office. If it was intended to limit the plaintiff's policy to the difference between the insurance held by the owner of the property and $6,000, the facts should have been so stated at the time of the indorsement of the removal. The company, however, recognized the policy as in full force and, even after the fire, levied an assessment upon the full amount of the premium note, which was paid by the plaintiff.

If the limitation in the by-law above referred to was to govern as between the company and the insured, it is somewhat difficult to understand why the full amount of the loss of the owner of the building was paid and the difference between the actual loss upon the property, real and personal, and the limit of $6,000, was made to fall entirely upon the plaintiff. In the absence of any allegation of fraud or negligence on the part of the plaintiff and with the fact found by the jury that there was actual notice to the defendant of the removal of the property, we cannot see how the court could have done otherwise than enter judgment for the plaintiff upon the verdict.

Judgment affirmed.